# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| IAN PHILLIP JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2107 (RBW) |
| | ) | |
| INTERNATIONAL PAINTERS AND | ) | |
| ALLIED TRADES INDUSTRY PENSION | ) | |
| PLAN, and | ) | |
| GARY J. MEYERS, Administrator | ) | |
| International Painters and Allied Trades | ) | |
| Industry Pension Plan, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## MEMORANDUM OPINION

Ian Phillip James, the plaintiff in this civil case, is seeking "compensatory damages for past benefits that have been improperly denied to him," Third Amended Complaint ("Compl.") ¶ 23, and a "declaratory judgment as to the amount of retirement benefits, both past and future, to which he is entitled to under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461 (2000) (the "ERISA"), id. ¶ 25. Additionally, the plaintiff alleges that defendants International Painters and Allied Trades Industry Pension Plan and its administrator, Gary J. Meyers, violated 29 U.S.C. § 1140 by retaliating against one of the plaintiff's prospective witnesses, id. ¶ 28-29, and "fail[ing] to supply . . . requested records, explanation and information," id. ¶ 42, and that the defendants breach the contract that governs the retirement benefits that are disputed in this case, id. ¶ 44. Currently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. After carefully considering the Complaint, the parties' summary judgment motions, and all memoranda of law

and exhibits submitted with these filings,[1] the Court concludes for the reasons below that it must (1) deny the plaintiff's and defendants' motion for summary judgment in part and without prejudice, and remand the case to the defendants for further consideration of the plaintiff's application for benefits, (2) deny the plaintiff's motion for summary judgment in part and with prejudice; and (3) grant the defendants' motion for summary judgment in part.[2]

# I. BACKGROUND

The plaintiff was a member of the Glaziers Local 963 union (the "Union") beginning from at least August 1, 1962. See Defs.' Mem. at 4 (acknowledging that the plaintiff's "initial union initiation date [was] August 1, 1962"); Pl.'s Opp'n at 4-5 (claiming that he was "a member of the [U]nion covered by the collective bargaining agreement" since 1959). While he was a member of the Union, the plaintiff was employed by employers who contributed to the Glaziers Local 963 Pension Plan (the "Local 963 Plan"). Defs.' Stmt. of Facts ¶ 1. From its inception, the Local 963 Plan was a trust and pension plan as defined under 29 U.S.C. 186(c)(5). Id. ¶ 2. The Local 963 Plan eventually merged into the International Painters and Allied Trades Industry

---

[1] In addition to the plaintiff's Complaint, his motion for summary judgment ("Pl.'s Mot."), and defendants' motion for summary judgment ("Defs.' Mot."), the Court considered the following documents in reaching its decision: (1) the defendants' Answer to Third Amended Complaint ("Defs.' Answer"); (2) the Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"); (3) the defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Opp'n"); (4) the Defendants' Statement of Genuine Issues in Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Reply to Pl.'s Stmt. of Facts"); (5) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply"); (6) the defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (7) the defendants' Statement of Material Facts as to Which There is No Genuine Issue in Support of Defendants' Motion for Summary Judgment ("Defs.' Stmt. of Facts"); (8) the Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"); and (9) the defendants' Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Defs.' Reply").

[2] The plaintiff has also moved for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) and 29 U.S.C. § 1140. Compl. ¶ 46. The Court finds it premature to address the plaintiff's claim for attorneys' fees at this time, as the Court has yet to resolve all of the claims in this action.

Pension Plan on January 1, 1998. Id. ¶ 4. The Merged Plan preserved all vested benefits under the Local 963 Plan. Id. ¶ 6.

To claim a vested interest in a deferred pension under the Local 963 Plan, a beneficiary must have accrued ten years of service credit. Defs.' Mem., Ex. 13 (Glaziers Local 963 Pension Fund Plan Description and Text of Plan, Effective April 1, 1971 (the "1971 Plan")) § 3.1; Defs.' Mem., Ex. 40 (Glaziers Local 963 Pension Plan Summary Plan Description and Text of Plan, As Amended Effective January 1, 1993 (the "1993 Plan") § 3.1. If, prior to vesting, a person worked fewer than 160 hours for two consecutive calendar years, all prior service credit accrued is "lost." Defs.' Mem., Ex. 13 (1971 Plan) § 2.3; see id., Ex. 40 (1993 Plan) § 4.3. Service credit is divided into either past service credit, which is credit awarded for any employment with a contributing employer prior to October 1, 1965, and future service credit, which is credit awarded for any employment with a contributing employer after October 1, 1965. Id., Ex. 13 (1971 Plan) §§ 2.1-2.2; id., Ex. 40 (1993 Plan) § 4.1.

The plaintiff, believing that he had accumulated "14.54 years of covered employment," thereby making him "a vested member of the Glaziers Local 963 union," Compl. ¶ 5. submitted an application for retirement benefits to the defendants on February of 2005, id. ¶ 7. The defendants denied the plaintiff's application on March 29, 2005, id. ¶ 8; Defs.' Answer ¶ 8, claiming that "the records received from the Local 963 Plan did not show [that the plaintiff was] a vested participant," Defs.' Reply to Pl.'s Stmt. of Facts ¶ 1. The plaintiff then attempted to bolster his application by providing the defendants with "authorization to obtain [his] Social Security Earnings Record on April 25, 2005." See Pl.'s Mot., Ex. 3 (May 5, 2005 Letter from Gary J. Meyers to Ian P. James). The defendants, however, contended that far from evidencing

the "claimed 14.54 years of service[,] . . . [his] claims conflict with information from [the successor to the Local Union 963 Plan] and his union membership card." Defs.' Reply to Pl.'s Stmt. of Facts ¶ 3. Thus, the defendants again denied the plaintiff's appeal on August 23, 2005. Defs.' Mem., Ex. 25 (August 23, 2005 Letter from Gary J. Meyers to Ian P. James) at 1.

After this second denial, the defendants "discover[ed] a Local 963 Plan record from 1973, and according to this record, [the plaintiff] had accumulated 3.3 years of past service credit before October 1, 1965[,] and 6.2 years of future service credit . . . for work with contributing employers." Defs.' Mem. at 4. The plaintiff received a letter on June 27, 2007, informing him of this information and the Board's conclusion that he was entitled to a pension of $409.68 in monthly benefits. Compl. ¶ 13. Upon the plaintiff's request, the defendants provided a "breakdown" of their calculations for his pension entitlement on August 16, 2007. Defs.' Mem., Ex. 38 (August 16, 2007 Letter from Gary Meyers to Neil Intrater) at 1. Notably, the defendants' calculations of the plaintiff's benefits was manifestly erroneous; specifically, the defendants determined that the plaintiff was entitled to $54.00 per month based on 3.3 years of past service credit at the rate of $1.50 per year, and $355.68 per month based on 6.2 years of future service credit at the rate of $4.94 per year. Id.

The plaintiff remained steadfast in his belief that he had "accrued several years of service credits [that] the Defendants [were] not honoring," id. ¶ 14, and that he was "entitle[d] to more than the $409.68 per month awarded by the [d]efendants," id. ¶ 15. Specifically, the plaintiff believed that he was entitled to credit for work performed between some unspecified date in 1959 and August 1, 1962 while "work[ing] for an employer covered by the [U]nion contract," and that he should have received additional credits for service that he purportedly performed in

1969, 1979, and 1980. Defs.' Mem., Ex. 4 (March 3, 2008 Letter from Gary Meyers to Neil Intrater (the "March 3, 2008 Letter") at 2. Thus, on August 20, 2007, the plaintiff appealed the defendants' June 27, 2007 determination. Id., Ex. 39 (August 20, 2007 Letter from Neil Intrater to Defendants) at 1. The defendants acknowledged receipt of the plaintiff's appeal and indicated that a decision would be issued after a meeting of the Merged Plan's trustees in February or March of 2008. Id.

On November 20, 2007, while his appeal was pending, the plaintiff filed the instant action. Pl.'s Mem. at 4. On March 3, 2008, the defendants denied the plaintiff's appeal. Defs.' Mem., Ex. 4 (March 3, 2008 Letter) at 1. The defendants reiterated that a 1973 Local 963 Plan service record listed the plaintiff with having only 9.5 years of service, id., and that he did "not produce[] any reliable evidence of additional service beyond the 1973 [service record]," id. at 2. With regards to his claim of service between 1959 and 1962, the defendants concluded that while the plaintiff's Social Security report "show[ed] work before 1962 with Local 963 employers, it [did] not show that this work was under a Local 963 Collective Bargaining Agreement," and that it was "unlikely that the [plaintiff] worked continuously in the Local 963 bargaining unit in Maryland from 1959 to 1962 without union membership." Id. at 3. The defendants further noted that for the disputed credits in 1979 and 1980, "[t]here is no record of contributory work in this period beyond union membership from December 5, 1979 to April 2, 1980." Id. In regards to the disputed credit for 1969, the defendants "estimate[d the] credit [the plaintiff was entitled to] for 1966 to 1969 by [computing] the ratio of earnings for years 1967, 1968, and 1969 from contributing employers to the high earnings from contributing employers on the [plaintiff's Social Security] report in 1966." Id. The defendants claimed that this calculation, when

considered along with the 1973 printout, confirmed that the plaintiff was only entitled to 6.3 future service credits for the time period between 1966 and 1973.  Id.  As for the claimed service credits in 1965, the defendants explained that "Section 4.1(a) of the [1993 Plan] gives past service credit for any plan year that began before [October 1, 1965]," where the employee "work[ed] under a Local 963 Collective Bargaining Agreement."  Id. at 2.  Because the term "plan year" was not defined in the 1993 Plan, the defendants inferred from the 1973 printout record that the term was to be defined as a "calendar year."  Id.  The defendants, however, did not provide a detailed breakdown of how it concluded that the plaintiff was entitled to 3.3 years of past service credit, except to say that any credits earned in "early 1965," were "drop[ped]" from the calculation, and the plaintiff instead received "part[-]year credit" in 1965 for work performed "from October 1, 1965 to December 31, 1965."  Id.

While the plaintiff continued to dispute the defendants' attribution to him of only 9.5 years of service, he ultimately decided that "due to the lack of documentation from the [d]efendants," as well as his "concern[s] about retaliation[,]" he would "discontinue the litigation." Compl. ¶ 16.  Therefore, "[o]n June 7, 2008, the [p]laintiff executed . . . acceptance forms for the $409.68 pension."  Id. ¶ 17.  However, "by a letter dated June 19, 2008, [the defendants] rejected the acceptance of benefits from [the plaintiff] and [allegedly] retaliated against [him] by ambiguously either retracting completely or reducing the amount of benefits offered to him from $409.68 to $46.93 per month."  Pl.'s Mot. at 5.  According to the letter, the defendants did not alter the prior amount of service time as to either past or future service credits previously awarded to the plaintiff, but they did make two substantive modifications:  first, the defendants revised the amount that the plaintiff should receive for past service credit from $1.50

to $4.94, and second, they addressed the mathematical error contained in the August 16, 2007 letter and adjusted the total benefit based on a correct computation of the plaintiff's service credit totals multiplied by the monthly award rates. Pl.'s Mot., Ex. 8 (June 19, 2008 Letter from Gary J. Meyers to Ian P. James) at 2.

Throughout this process, the plaintiff asserts that he "has repeatedly requested a clear explanation of the [d]efendants' calculations, copies of all relevant pension plans[,] and a copy of the [p]laintiff's complete records," Compl. ¶ 9, but he asserts that he "has never received a clear explanation" of these calculations or relevant Plan documents, id. ¶ 10. Despite the plaintiff's assertions, the defendants maintain that "[a]ll available responsive documents were provided to [the p]laintiff," Meyers Decl. ¶ 8, and that after "considerable time and effort" the defendants were unable to locate certain information because of "problems arising from old and missing records," id. ¶ 7. The defendants assert that since the plaintiff's Local 963 Plan was a separate entity until 1998, it was not the "responsibility of the [defendants], nor was it possible [for them], to maintain Local 963 Plan records." Id. ¶ 4.

To further complicate this matter, the plaintiff revealed during discovery that he intended to call Harold Schwartz as a witness in his case. Compl. ¶ 19. The plaintiff claimed that "[Mr.] Schwartz, who worked roughly the same years as the [p]laintiff, had been awarded a monthly pension of $602.00 in March of 2002." Id. ¶ 20. However, the plaintiff states that "[i]n retaliation against [Mr.] Schwartz for his potential testimony in this case[,] the [d]efendants terminated his benefits by letter dated June 19, 2008." Id. ¶ 21. In their defense, the defendants assert that "[t]he action taken with respect to Mr. Schwartz was not in retaliation for being named as a witness," but rather because a review of the evidence "showed that [he] was

erroneously awarded benefits based on the work history [of] his deceased son, Harold Schwartz, Jr." Defs.' Reply to Pl.'s Stmt. of Facts ¶ 8. They also note that "Mr. Schwartz has filed an appeal of the termination of his benefits and the [defendants are] obtaining his employment and other records to consider his appeal." Id. ¶ 10.

In reaction to the defendants' actions, the plaintiff amended his complaint on July 21, 2008, to add an additional request for "relief and damages . . . pursuant to 29 U.S.C. § 1132," Compl. ¶ 33, for "retaliat[ing] against the [p]laintiff for filing the . . . lawsuit," id. ¶ 28, and also for "retaliating against . . . [Mr.] Schwartz," id. ¶ 29. In addition, the plaintiff reiterated his claims for (1) monetary compensation for past benefits that have been denied, id. ¶ 23; (2) a "declaratory judgment as to the amount of retirement benefits . . . to which he is entitled," id. ¶ 25; (3) "injunctive relief directing . . . [the plan administrator,] Gary J. Meyers, . . . to pay the [p]laintiff the benefits to which [he] is entitled," id. ¶ 36; (4) statutory damages pursuant to 29 U.S.C. § 1132(c)(1)(B) for "fail[ing] to provide the [p]laintiff[] [with his] union employment records or relevant documentation," id. ¶ 39; (5) common law breach of contract, id.; and (6) attorney's fees, id. ¶ 46. The plaintiff then moved for summary judgment on November 1, 2008, while the defendants submitted their motion for summary judgment on November 5, 2008.

## II. STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, this Court must find that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby,

477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial."  Anderson, 477 U.S. at 248 (internal quotation and citation omitted) (second omission in original).  Thus, "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment [may be] granted."  Id. at 249-50 (internal citations omitted).

### III.  LEGAL ANALYSIS

The parties present for the Court's consideration several issues in their cross-motions for summary judgment, namely: (1) whether the plaintiff is entitled to a pension and, if so, how much money per month is he entitled to receive; (2) whether the defendants have a duty to maintain the plaintiff's employment and union records and, if so, whether penalties should be levied against the defendants for their failure to supply that information to the plaintiff pursuant to 29 U.S.C. § 1059; (3) whether the defendants violated 29 U.S.C. §§ 1024, 1025, and

1132(c)(1), by failing to provide the plaintiff with copies "of the relevant plans and regulations" regarding the Local 963 Plans; (4) whether the defendants impermissibly retaliated against both the plaintiff and his witness, Mr. Schwartz, in violation of 29 U.S.C. § 1140; and (5) whether the defendants breached the pension agreement at issue in this case. For the reasons explained in detail below, the Court concludes that the issue of whether the plaintiff is entitled to a vested pension is not yet ripe for adjudication in this forum because there is reason for the Court to believe that the defendants did not apply the correct version of the Local 963 Plan to calculate the plaintiff's service credits, and that application of a different set of provisions could potentially yield a different result. Additionally, because the defendants' determination regarding the plaintiff's pension is a material factor in determining whether they violated any duty to provide information regarding the pertinent Local 963 Plans pursuant to 29 U.S.C. § 1132(c)(1), the Court will also defer consideration of this claim. But, as a matter of law, the Court can conclude from the record currently before it that (1) the defendants have no duty under the law to maintain the plaintiff's employment and union records under 29 U.S.C. § 1059; (2) the plaintiff has failed to show that the defendants impermissibly retaliated against him in violation of 29 U.S.C. § 1140; (3) the plaintiff lacks standing to raise a retaliation claim as to Mr. Schwartz; and (4) that his breach of contract claim has been pre-empted by Sections 1144(a) and 1132(a)(1)(B) of the ERISA. The Court will analyze each issue in turn.

**A.      The Plaintiff's Claim for Benefits Under the Local 963 Plan**

As an initial matter, the Court must first decide the appropriate standard for conducting its review of the defendants' decision to deny the plaintiff's claim for pension benefits. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court determined that

"a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Id.</u> at 115. In cases where the administrator or fiduciary has been given discretionary authority, the standard of review to be applied by a court has been "variously described by the [Supreme] Court as 'arbitrary and capricious' or 'abuse of discretion,'" but regardless of how it is phrased, the standard to be applied "is plainly deferential." <u>Wagener v. SBC Pension Benefit Plan-Non-Bargained Program</u>, 407 F.3d 395, 402 (D.C. Cir. 2005) (citing <u>Firestone</u>, 489 U.S. at 111-15). And the District of Columbia Circuit "has defined the <u>Firestone</u> deferential standard as one of 'reasonableness.'" <u>Id.</u> (quoting <u>Block v. Pitney Bowes, Inc.</u>, 952 F.2d 1450, 1454 (D.C. Cir. 1992)). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" <u>Id.</u> (quoting Restatement (Second) of Trusts § 187, cmt. d (1959)).

In reviewing a benefit plan to determine the appropriate standard of review in any given case, "<u>Firestone</u> . . . did not suggest that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.'" <u>Block</u>, 952 F.2d at 1453 (quoting <u>Firestone</u>, 489 U.S. at 115). "Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe terms of the plan.'" <u>Block</u>, 952 F.2d at 1453 (quoting <u>Firestone</u>, 489 U.S. at 115). Thus, the court should look for the presence of "[e]mpowering language." <u>Id.</u> at 1453; <u>see</u> <u>Becker v. Weinberg Group, Inc. Pension Trust</u>, 473 F. Supp. 2d 48, 61 (D.D.C. 2007).

Here, the plaintiff asserts that the Local 963 Plan contains "[n]o explicit discretionary authority," Pl.'s Mem. at 6, and therefore the Court must evaluate the defendants' eligibility determination de novo, id. at 5. The defendants, on the other hand, point to Section 4.5 of the 1971 Local 963 Plan as grounds for why discretionary review should be employed; this provision states that "[i]n the application and interpretation of this Pension Plan, the decisions of the Board of Trustees shall be final and binding on all parties, including Employees, Employers, Union, Pensions, and Beneficiaries." Defs.' Mem., Ex. 13 (1971 Rules) at 26; see also id., Ex. 40 (Glaziers Local 963 Plan) at 34 ("The Trustees shall be the sole judges of the standard of proof required in any case."). Moreover, they note the Merger Agreement between the Local 963 Plan and the Trustees of the International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund provides that all "rights and duties in relation to the [Local 963 Plan] shall be assumed by the [International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund]." Id., Ex. 42 (Merger Agreement) § 5.03; see also id. § 8.01 ("All questions of interpretation of this [Merger] Agreement shall be resolved by the International Trustees consistent with their fiduciary responsibilities."). Finally, the defendants point out that under the International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund, the Plan's trustees "have full discretion and authority to determine all questions of fact or law arising in the administration, interpretation, and application of the Plan." Id., Ex. 41 (International Painters and Allied Trades Industry Pension Plan ("International Painters Plan") § 2.03.

The language quoted above clearly grants discretionary authority under the teachings of both Firestone and Block. Indeed, in Block the District of Columbia Circuit favorably cited a number of decisions that construed language similar to that quoted above where those courts

concluded that the administrator's decision should be reviewed only for reasonableness. See Block, 473 F.2d at 1453; see also De Nobel v. Vitro Corp., 885 F.2d 1180, 1186-87 (4th Cir. 1989) (finding that power "[t]o determine all benefits and resolve all questions pertaining to the administration, interpretation and application of Plan provisions" entitled the plan to deferential review (emphasis omitted)). And, the language conferring authority on the administrator to decide "the application and interpretation of" the Local 963 Plan, and that his decision "shall be final and binding on all parties," Defs.' Mem., Ex. 13 (the 1971 Plan) at 26, is just the type of "empowering language" to which Block referred, 952 F.2d at 1453. Additionally, as a multi-employer pension fund, as is the case here, the defendants do not pay beneficiaries from their own funds, see Defs.' Mem., Ex. 13 (1971 Plan) at 17 ("The cost [of the Plan] is paid by contributions made to the [Plan] by your employer"), and thus the Court need not be concerned about conflicts of interest, see, e.g., Taylor v. Pension Plan of Pipefitters Local 537 Pension Fund, Civil Action No. 06-12156-DPW, 2009 WL 1812794, at *13 (D. Mass. June 11, 2009), as this is not a situation in which "it is the employer that both funds the plan and evaluates the claims," Metropolitan Life Ins. Co. v. Glenn, ___ U.S. ___, ___, 128 S. Ct. 2343, 2348 (2008). It is under such circumstances that the Court must apply additional scrutiny in determining whether there has been an abuse of discretion, because "every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in the employer's pocket," and "[t]he employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary." Id. The Court therefore concludes that a more searching review is unnecessary in this case.[3]

---

[3] The plaintiff also argues that regardless of any language in the Local 963 Plan, de novo review is nonetheless required because "the [d]efendants have consistently violated the procedural requirements of the ERISA statutes."

(continued . . .)

Having settled the issue of the appropriate standard of review, the Court must next determine which plan governs the plaintiff's application for benefits. The plaintiff asserts that the International Painters and Allied Trades Industry Pension Fund plan controls his entitlement to benefits because it favors his position and "[t]he post-merger plan states that an employee who was covered by a prior plan may use 'whichever provision [that] is more advantageous to him.'" Pl.'s Mem. at 14; id., Ex. 41 (International Painters and Allied Trades Industry Plan), § 4.02. However, in advancing this position, the plaintiff has ignored the agreement that merged the International Painters and Allied Trades Industry Pension and the Local 963 Plans. The Merger Agreement states that the Local 963 Plan is "substitut[ed]" by the International Painters and Allied Trades Industry Pension Plan, subject to severe "special transitional provisions." Defs.' Mem., Ex. 42 (Merger Agreement) Art. 3. And, the relevant transitional provisions in the Merger Agreement refute the notion that the plaintiff is the intended beneficiary of the "most advantageous" language in the International Painters and Allied Trade Industry Pension Plan.

---

(. . . continued)

Pl.'s Mem. at 6. As referenced earlier, the plaintiff argues that the defendants violated both their duty to maintain and produce employee records, as well as their duty to produce relevant rules, regulations, and policies regarding the Local 963 Plan. See supra at 8. It is true that several circuits and a district court have held that some violations of the ERISA entitle a plaintiff to de novo review despite the conferral of discretionary authority within the plan documents. See Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 631 (10th Cir. 2003) ("We hold that when substantial violations of [the] ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial de novo, even if the plan administrator has discretionary authority to decide claims."); see also Jebian v. Hewlitt-Packard Co. Employees Benefit Org. Income Prot. Plan, 349 F.3d 1098, 1107 (9th Cir. 2003) (agreeing that consequential, but not inconsequential, violations of the ERISA would entitle the plaintiff to de novo review); McDowell v. Standard Ins. Co., 555 F. Supp. 2d 1361, 1373 (N.D. Ga. 2008) (agreeing with Gilbertson). This Circuit, however, has not considered the question of whether certain violations of the ERISA require de novo review, even though discretionary review would otherwise be appropriate.

At this point in the litigation, the Court will presume that there has not been any substantial or consequential violations of the ERISA procedural requirements. As discussed below, the defendants have no duty to maintain or produce to the plaintiff any of his employment or union records, and furthermore, it is premature at this stage to determine whether the defendants had a duty to produce information regarding the Local 963 Plan, because whether the defendants had a duty to produce such information may depend on whether the Court concludes that the plaintiff is a vested participant in the Local 963 Plan. See infra at 19-20. The Court, however, will revisit this issue once the defendants have addressed the issue of the plaintiff's pension entitlement as instructed below.

Specifically, Section 4.01 of the Merger Agreement states that "[n]o person receiving benefits or entitled to receive benefits from the [Local 963 Plan] on or before the effective date of this [Merger] Agreement shall be eligible for any increase in his benefit as a result of this [Merger] Agreement." Id. § 4.01. Additionally, Section 4.03 of the Merger Agreement continues that

> [t]he [Local 963 Plan participating employees] must work at least 250 contributory hours in employment covered under the [Local 963 Plan] in 1997 to be eligible to receive the [International Painters and Allied Trade Industry Pension Plan] benefits with respect to service before the effective date of this [Merger] Agreement.

Id. § 4.03. As it is undisputed that the plaintiff did not work the requisite 250 hours in 1997, see Defs.' Stmt. of Facts, Ex. A (Ian P. James Work History) at 1, it is clear that the plaintiff is limited to those benefits, if any, that he is entitled to under the Local 963 Plan.

But while it is clear that the plaintiff is entitled to only those benefits that are conferred by the Local 963 Plan, the question remains as to which Local 963 Plan governs this dispute. The parties have identified two versions of the Local 963 Plan, one of which became effective on April 1, 1971, and the other on January 1, 1993. See generally Defs.' Mem., Ex. 13 (1971 Plan); id., Ex. 40 (1993 Plan). In the defendants' March 3, 2008 response to the plaintiff's objections regarding his service credits, the defendants note that "[t]he earliest available complete plan document is a January 1, 1993 restatement," id., Ex. 4 (March 3, 2008 Letter) at 2; thus, it is evident from the March 3, 2008 Letter that the defendants did not consider whether the 1971 Plan controls this dispute. Of course, one possible reason why the defendants did not apply the 1971 Plan to the plaintiff's application for benefits is because they were unable to procure a copy of that version of the Plan until the plaintiff produced the document in discovery. Cf. id. at 5 (asserting that the plaintiff "had a copy of the [1971 Plan] . . . and produced it in discovery during this litigation"); id., November 4, 2008 Declaration of Gary J. Meyers, ¶ 17 ("During the

course of this lawsuit, [the plaintiff] provided the [defendants] with a copy of the 1971 Glaziers Local 963 Pension Fund Plan."). Nonetheless, the defendants did not consider and, therefore, did not apply the provisions of the 1971 Plan in determining whether the plaintiff had a vested interest in a pension under the Local 963 Plan, and that the only provisions that the defendants applied in the March 3, 2008 letter were taken from the 1993 Plan.

However, Section 11.4 of the 1993 Plan calls into question whether this version of the Local 963 Plan is even applicable to the plaintiff's case and, now that the defendants possess a copy of the 1971 Plan, whether that version should be applied instead. Section 11.4 of the 1993 Plan states the following:

> The terms and conditions of the Plan as restated herein shall amend and supersede, effective October 1, 1976, the terms and conditions of the Glaziers Local 963 Pension Plan, as in effect prior to October 1, 1976; provided, however, that the provisions of such prior plan shall continue to govern the rights of all Employees who were covered thereunder and who do not become Active Employees on or after October 1, 1976, except as otherwise stated herein

Defs.' Mem., Ex. 40 (1993 Plan) § 11.4 (emphasis added). As for who constitutes an "active employee" under the 1993 Plan, Section 1.2 states:

> "Active Employee" means, as of the date in question, an Employee or former Employee who is other than a Retired Employee, and who has not incurred a one-year Break in Service, or if he has incurred a one-year Break in Service, has had contributions made to the Plan on his behalf subsequent to his most recent one-year Break in Service, provided however, that an employee who has not had contributions made to the Plan on his behalf on or before October 1, 1976, shall not be considered to be an Active Employee.

Id. § 1.2 (emphasis added). According to Section 11.4, if the plaintiff is someone who was covered under the prior plan (in this case, the 1973 Plan), and is also someone who did not fall within the definition of an "Active Employee" on or after October 1, 1976, then the 1993 Plan does not apply.

Based on the record now before the Court, there is no documentation or other evidence establishing that the defendants have addressed the issue of whether the 1993 Plan or the 1971 Plan applies to the plaintiff's application for retirement benefits. Given that the defendants are "the sole judges of the standard of proof required in any case" arising out of the Plan, id., Ex. 13 (1971 Plan) § 4.5; see also id., Ex. 41 (International Painters and Allied Trades Industry Pension Plan ("International Painters Plan") § 2.03(a) (conferring upon the Merged Plan "full discretion and authority to determine all questions of fact or law arising in the administration, interpretation, and application of the [p]lan"); id., Ex. 42 (Merger Agreement) § 5.03 (providing that all "rights and duties in relation to the [Local 963 Plan] shall be assumed by the" International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund), and that their decisions are entitled to significant deference under <u>Firestone</u> and its progeny, the Court must therefore provide the defendants with the opportunity to address this issue in the first instance. <u>See</u> <u>Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Plan</u>, 85 F.3d 455, 461 (9th Cir. 1996), <u>quoted</u> in Doe v. Mamsi Life and Health Ins. Co., 471 F. Supp. 2d 139, 149 (D.D.C. 2007) (Huvelle, J.) (concluding that "remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the [p]lan and applied a wrong standard to a benefits determination"). Furthermore, if the defendants conclude that the 1971 Plan, rather than the 1993 Plan, applies to the facts of this case, then the defendants must also make a "full and fair assessment of [the plaintiff's] claims" using the standards set forth in the 1971 Plan for determining whether the plaintiff has a vested pension under the Local 963 Plan, and the defendants must also provide a "clear communication to the claimant of the specific reasons for benefit denials," if any, under

the terms of that version of the plan.  <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 825

(2003) (citing 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 (2002)).[4]  For these reasons, the

---

[4] Indeed, the defendants should make certain on remand to heed the Supreme Court's mandate under <u>Nord</u>, as their breakdown of the plaintiff's service credits in their March 3, 2008 letter fell woefully short of the standard for clear communication and specificity as set forth under the ERISA.  For instance, the defendants provided the following analysis of their conclusion that the plaintiff is entitled to only 3.3 years in past service credits:

> Section 4.1(a) of the 1993 Local 963 Plan gives past service credit for any plan year that began before 10/1/65 with work under a Local 963 Collective Bargaining Agreement. . . . The [defendants'] membership records and book from [the plaintiff] show that he joined the union on August 1, 1962.  The term "plan year" is not defined in the extant Local 963 documents but the 1973 printout record implies the use of a calendar year for past service (as well as future service), thus drops [sic] early 1965 and includes part year credit from October 1, 1965 to December 31, 1965 in the past service column (based on the future service rate of 1/10 year for 160 hours in a normal work month in the document) to yield 3.3 years of past service credit.  The simple elapsed time from August 1, 1962 to October 1, 1965 does not yield 3.3 years.

<u>Id.</u> at 4.  The defendants appeared to conclude (although it is not entirely clear from the explanation above) that three-tenths of the plaintiff's past service credits were derived from his service from October 1, 1965 to December 31, 1965.  And, the defendants also seemed to suggest that the plaintiff was not awarded past service credits for at least a portion of 1965, even though there is no explanation whatsoever as to why his covered employment during that period was "drop[ped]" from the calculation of his past service credits.  Other than those conclusions, however, there is nothing in the paragraph above that provides a clear explanation as to how the defendants reached their conclusion that the plaintiff was entitled to another three years of past service credit.

In fact, it should be noted that under the defendants' somewhat incoherent explanation, the Court would have to conclude that the defendants' application of Section 4.1(a) to the plaintiff's application for benefits would not be consistent with a reasonable interpretation of the 1993 Plan.  As it stands now, the Court believes that the defendants' application of Section 4.1(a) to the facts of this case presents three issues.  First, as the 1993 Plan makes clear, credits earned between October 1, 1965, and December 31, 1965, constitute <u>future</u> service credits, not past service credits.  <u>See id.</u>, Ex. 40 (the 1993 Plan) § 4.1(a) (defining past service, inter alia, to include employment that "begins before October 1, 1965"); <u>id.</u> at § 4.1(b) (setting forth the standards for calculating "[f]uture [b]enefit [s]ervice [for] [s]ervice [o]n and [a]fter October 1, 1965").  Thus, the defendants' explanation that three-tenths of the plaintiff's past service credits were earned after October 1, 1965, is clearly in error.  Second, as alluded to above, the defendants fail to explain why the plaintiff's covered employment in "early 1965" was "drop[ped]" from their calculation of the plaintiff's past service credits; indeed, exactly what time period the defendants intended to encompass in the term "early 1965" is anyone's guess.  Third, and most importantly, the defendants' interpretation would result in the plaintiff having to forfeit compensation that may have been rightfully earned by him during the "early 1965" time period.  The parties do not dispute the fact that in 1965, the plaintiff was employed and covered under the Local 963 Plan.  <u>See</u> Defs.' Stmt. of Facts, Ex. A (Ian P. James Work History) at 2.  Thus, the plaintiff is entitled to any service credits that he should have been awarded under the Local 963 Plan for work performed during this period or, at the very least, and explanation as to why he is no longer entitled to those credits.  As the Supreme Court noted, "the future retirement benefits of active workers are part and parcel of their overall compensation," <u>Allied Chem. & Alkali Workers Local Union No. 1 v. Pittsburgh Plate Glass Co.</u>, 404 U.S. 157, 180 (1971), and the defendants cannot, and should not, expect this Court to uphold an interpretation of the 1993 Plan that would strip the plaintiff of rightfully-earned compensation absent any evidence that warrants that result.  Accordingly, the defendants, on remand, should take notice of the Court's observations in making a "full and fair assessment of [the plaintiff's] claims" and to provide the plaintiff with a "clear communication . . . of the specific reasons" for their decision.  <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 825 (2003) (citing 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 (2002)).

Court will remand the matter to the defendants (and, more specifically, the Board of Trustees for the Merged Plan) for further consideration of the plaintiff's application for benefits consistent with the observations findings set forth in this Memorandum Opinion.

**B.      The Plaintiff's Claim for Access to Plan Documents**

The plaintiff also asserts that he is entitled to damages because the "[p]laintiff has never received a clear explanation of the [d]efendants' calculations [or] copies of all relevant pension plans."  Compl. ¶ 10.  It is true that the defendants, as administrators of a multi-employer pension plan, have a statutory duty to furnish "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established and operated" upon written request "of any participant or beneficiary."  29 U.S.C. § 1024(b)(4).  The defendants must also furnish, upon written request by a participant or beneficiary, a pension benefit statement including the total benefits accrued and nonforfeitable benefits already accrued or, if not accrued, the date on which they will become nonforfeitable.  29 U.S.C. § 1025(a).  But, as these provisions make clear, an administrator only owes a duty to produce such documentation to "participants and beneficiaries" as defined under these statutes.  Put differently, if the plaintiff does not qualify as a "participant" or a "beneficiary," then the plaintiff lacks the statutory standing to sue for damages.

The plaintiff does not, and cannot, seek damages under these provisions on the grounds that he is a "beneficiary" because he has not alleged to have been "<u>designated</u> by a participant . . . who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8) (emphasis added).  Whether or not the plaintiff is a "participant" under 29 U.S.C. § 1002(7), however, is a closer

question.  In <u>Firestone</u>, the Supreme Court grappled with the question of who constitutes a "participant" under the ERISA, and therefore who may sue under Section 1132(c).  489 U.S. at 115-18.  The Court concluded that "the term 'participant' is naturally read to mean 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits."  <u>Id.</u> at 117 (internal citations omitted).  The plaintiff is not a current employee, nor has he established (or even asserted) that he is a former employee who has a reasonable expectation to once again work for an employer who will contribute to the Local 963 Plan.  Thus, the only avenue available to the plaintiff to prevail under Section 1332(c) is for him to establish that he has "a colorable claim" to vested benefits.  Under <u>Firestone</u>, this means that the "claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  489 U.S. at 117-18.  There is no reason at this point to think that the defendant's eligibility requirements will be fulfilled in the future, as again, he has not even alleged any intention of returning to covered employment.  As for whether he has a colorable claim to prevail in a suit for benefits, this is a more difficult question to answer without knowing which of the two Local 963 Plans applies to his application for benefits, and, as the Court indicated above, this issue is one for the defendants to address in the first instance. Thus, at this juncture, the Court must defer its decision on this issue until after the defendants have issued a revised decision regarding the plaintiff's eligibility for a vested pension under the Local 963 Plan.

**C.      The Plaintiff's Suit for Access to Employee Documents**

The plaintiff asserts that pursuant to 29 U.S.C § 1059(a)(1), it was the defendants' responsibility to maintain the plaintiff's employment and union records, Pl.'s Mem. at 6. However, the plain text of the statute to which he cites does not apply to the defendants, but rather to the plaintiff's former employers.   <u>See</u> 29 U.S.C. § 1059(a)(1) (requiring that an "<u>employer</u> . . . maintain records with respect to each of his employees" (emphasis added)). Indeed, many of the cases construing Section 1059(a)(1) concern the trustees of multi-employer pension plans, such as the defendant in this case, suing an employer for failure to comply with Section 1059(a)(1).   <u>See, e.g.</u>, <u>Trustees of Chicago Painters and Decorators Pension, Health, and Welfare, and Deferred Savings Plan Trust Funds v. Royal Int'l Drywall and Decorating, Inc.</u>, 493 F.3d 782, 786 (7th Cir. 2007) (finding that the time sheets maintained by the employer were "not enough to comply with [Section 1059] unless the time sheets are sufficient to determine the actual hours worked" by its employees); <u>Trustees of Painters Union Deposit Fund v. Ybarra Const. Co.</u>, 113 Fed. Appx. 664, 667 (6th Cir. 2004) (noting that Section 1059(a)(1) "imposes a clear duty on the employer to maintain adequate records" of its employees) (quoting <u>Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.</u>, 30 F.3d 692, 695 (6th Cir. 1994)).   Of course, the defendants must "discharge [their] duties with respect to a plan solely in the interest of the participants and . . . with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity . . . would use," 29 U.S.C. § 1104(a)(1)(B), and this may include a duty to <u>procure</u> the plaintiff's employment and union records from his employers, <u>cf.</u> <u>Cent. States, S.E. and S.W. Areas Pension Fund v. Cent. Transp., Inc.</u>, 472 U.S. 559, 571 (1985) ("ERISA clearly assumes that . . . trustees will take steps to

identify all participants and beneficiaries."). But, the plaintiff does not cite, and the Court is unaware of, any statutory or case authority that places the burden on the trustees to <u>maintain</u> employment or union records of pension plan participants.[5] The Court, therefore, must grant summary judgment in favor of the defendants as to this count.

**D.     The Plaintiff's Retaliation Claims**

The ERISA provides that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled." 29 U.S.C. § 1140. Additionally, the statute provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding." <u>Id.</u> In relying on these provisions, the plaintiff asserts that the defendants, "[i]n retaliation against the [p]laintiff for filing the instant lawsuit, . . . rejected the [p]laintiff's acceptance and reduced the offered pension." Compl. ¶ 28. Additionally, the plaintiff claims that "the [d]efendants have retaliated against [one of his] witness[es], Harold Schwartz, who was named in discovery as a witness who would testify in favor o[f] the [p]laintiff." <u>Id.</u> As discussed below, howver, these claims must be dismissed.

When faced with claims of retaliation against individuals under the ERISA, the District of Columbia Circuit has indicated that the Court should "treat such a claim akin to a Title VII case using the classic <u>Burdine</u> framework." <u>Andes v. Ford Motor Co.</u>, 70 F.3d 1332, 1337 (D.C. Cir. 1995) (citing <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248 (1981)). That

_____

[5] Even assuming that the defendants had a duty under the ERISA to maintain the plaintiff's employment and union records once they came into possession of such records, the plaintiff fails to provide any evidence that the defendants breached that duty. The plaintiff has not provided any evidence that the documents he seeks ever existed or were possessed at some point by the defendants, and thus, it is impossible for the Court to conclude that the defendants violated any duty to maintain the plaintiff's records.

framework, initially articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), requires an initial prima facie showing of retaliation by the plaintiff, followed by the burden shifting to the defendant to proffer a legitimate, non-retaliatory reason for its action, culminating in the plaintiff then having an opportunity to demonstrate that the defendant's proffered reason was either not true or a pretext for retaliation. <u>Id.</u> at 802-04. To establish a prima facie case in the Title VII context, a plaintiff has to demonstrate that "(1) [he engaged in] protected activity; (2) the employer's action ha[d] an adverse impact on [him]; and (3) a causal relationship between the protected activity and the adverse action [existed]." <u>Paquin v. Fed. Nat'l Mortgage Ass'n</u>, 119 F.3d 23, 31 (D.C. Cir. 1997). However, the District of Columbia Circuit has more recently made clear, again in Title VII cases, that once an employer has proffered a legitimate, non-retaliatory explanation for its action, courts should then focus only on whether the plaintiff "produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . reason was not the actual reason and that the employer intentionally [retaliated] against the employee [for an unlawful reason]." <u>Brady v. Office of Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008). Although this recent clarification has not been extended to claims under the ERISA, the Court concludes that since the circuit court has indicated that claims brought under Section 1140 alleging retaliation against individuals should be analyzed under the Title VII framework, <u>see</u> <u>Andes</u>, 70 F.3d at 1337, the circuit's more recent decisions discussing the method of analysis of Title VII claims have equal force to claims brought under Section 1140. Therefore, the Court looks to whether the plaintiff has demonstrated that the defendants' proferred reason for its action is a pretext. <u>Brady</u>, 520 F.3d at 494.

There is no evidence, however, that the defendants retaliated against the plaintiff because he asserted his right to a pension. Other than repeat his allegations of the defendants' efforts to deny him a vested pension, see, e.g., Pl.'s Mem. at 9 (asserting that the defendants have "refused to provide" the plaintiff with a description of how the retracted pension benefit was calculated), the plaintiff has done nothing to call into question the defendants' proferred justification for its reduction or elimination of his pension. About the only colorable claim of retaliation that he presents in his C is that the defendants retaliated against him by "reduc[ing] the amount of benefits offered to the [p]laintiff" in a June 19, 2008 letter. Compl. ¶ 18. In fact, the defendants' calculation of the plaintiff's benefits in its August 16, 2007 letter was erroneous on its face. In that letter, the defendants determined that the plaintiff was entitled to $54.00 per month based on 3.3 years of past service credit at a rate of $1.50 per month, and that he was entitled to $355.68 based on 6.2 years of future service credit at a rate of $4.94 per month. Id. Simple arithmetic, however, makes clear that multiplying 3.3 years of past service credit to a rate of $1.50 yields a benefit of $4.95 a month, and that multiplying 6.2 years of future service credit at a rate of $4.94 a month yields a benefit of $30.69. Accordingly, no reasonable jury could find that the defendants' June 19, 2008 letter was an act of retaliation against the plaintiff.

As for the plaintiff's assertion of alleged retaliation against his proposed witness, Mr. Schwartz, Pl.'s Mem. at 5, the Court can easily resolve this claim in favor of the defendants. As the defendants correctly note, there is a "general prohibition on the litigant raising another person's legal rights," Allen v. Wright, 468 U.S. 737, 751 (1984), and the plaintiff's failure to identify any injury to himself resulting from the alleged retaliatory reduction of Mr. Schwartz's pension dooms this part of his retaliation claim. Thus, the Court must grant summary judgment

in favor of the defendants with regards to the plaintiff's claim of retaliation by the defendants against himself and Mr. Schwartz.

**E.    The Plaintiff's Breach-of-Contract Claim**

Finally, the plaintiff "asserts common law breach[-]of[-]contract [claims] on the part of both [d]efendants." Compl. ¶ 44. Although the defendants did not address the plaintiff's breach-of-contract claim, and normally the Court might consider the argument conceded, see Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (Walton, J.) ("[W]hen a [party] files an opposition to a dispositive motion and addresses only certain arguments . . . , a court may treat those arguments that the [party] failed to address as conceded"), here, the Court will not do so because it has no authority to entertain the plaintiff's breach-of-contract claim due to preemption by the ERISA, see Aetna Health Inc. v. Davila, 542 U.S. 200, 208-13 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted"). Indeed, the breach-of-contract claim asserted by the plaintiff is no different in character from the breach-of-contract claim raised in Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987), where the Supreme Court held that

> [u]nder our decision in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 [(1987)]. . . Taylor's common law contract and tort claims are pre-empted by ERISA. This lawsuit "relate[s] to [an] employee benefit plan." § 514(a), 29 U.S.C. § 1144(a). It is based upon common law of general application that is not a law regulating insurance. Accordingly, the suit is pre-empted by [29 U.S.C. § 1144(a)] and is not saved by [§ 1144(b)(2)(A)]. Moreover, as a suit by a beneficiary to recover benefits from a covered plan, it falls directly under [29 U.S.C. § 1132(a)(1)(B)], which provides an exclusive federal cause of action for resolution of such disputes.

(internal citations omitted).  Accordingly, the defendants' motion for summary judgment as to the plaintiff's breach-of-contract claim is granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies the plaintiff's and defendants' motion for summary judgment in part and without prejudice, and remand the case to the defendants for further consideration of the plaintiff's application for benefits, deny the plaintiff's motion for summary judgment in part and with prejudice, and grant the defendants' motion for summary judgment in part.  Specifically, the Court denies both the plaintiff and defendants' claims without prejudice in regards to the defendants' determination of benefits under the Local 963 Plan, and, furthermore, the Court remands this matter to the defendants for further consideration of the plaintiff's application for retirement benefits consistent with this Memorandum Opinion. Likewise, the Court also denies without prejudice the plaintiffs' claim that the defendants failed to produce plan documents, although the Court grants the summary judgment in favor of the defendants in regards to the plaintiffs' claim that the defendants failed to provide employment and union records.  Lastly, the defendants' motion for summary judgment with respect to the plaintiff's retaliation and breach of contract claims is also granted.

**SO ORDERED** this 30th day of April, 2010.[6]


REGGIE B. WALTON
United States District Judge

---

[6] An order was issued on March 31, 2010 (1) denying the plaintiff's and defendants' motion for summary judgment in part and without prejudice, and remanding the case to the defendants for further consideration of the plaintiff's application for benefits, (2) denying the plaintiff's motion for summary judgment in part and with prejudice; and (3) granting the defendants' motion for summary judgment in part.  An amended order will accompany the issuance of this memorandum opinion to reflect that the March 31, 2010 Order is vacated, and that the amended order is now final.